COMMONWEALTH *vs.* PAUL F. McGAFFIGAN
(and three companion cases[1]).

Suffolk.    January 3, 1967. — April 5, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Constitutional Law,* Assistance of counsel, Due process of law. *Practice, Criminal,* Assistance of counsel, View, Argument by prosecutor. *Prisoner.*

Where it appeared that a police officer making an arrest at 4:30 A.M. told the arrested person that the officer wanted no statement from him and that he had a right to remain silent, that the arrested person was released from custody less than seven hours after his arrest, that he was not interrogated and made no statement to police from the time of his arrest to the time of his trial upon an indictment for the crime for which he had been arrested, and that, although he was refused use of a telephone while under arrest, the refusal did not hamper him in securing witnesses nor otherwise prejudice him, it was held that there was no violation of his right under the Constitution of the United States and the Constitution of Massachusetts to the assistance of counsel and that the violation of his right under G. L. c. 276, § 33A, to the use of a telephone did not require dismissal of the indictment or allowance of his motion for a directed verdict.   [335–336]

There was no abuse of discretion in denial of the defendant's motion for a view at a criminal trial in which diagrams of the area of the crime were used in connection with the testimony.   [336]

Remarks by the prosecutor in his closing argument in a criminal case which were intended to answer an argument of the defendant's counsel attacking the consistency of the testimony of police officers were not beyond the bounds of legitimate argument.   [337]

INDICTMENTS found and returned on May 3, 1966.

The cases were tried in the Superior Court before *Bolster, J.*

*Robert E. Dinsmore* for the defendants.

*Newman A. Flanagan,* Assistant District Attorney, for the Commonwealth.

---

[1] One case is against the same defendant and two cases are against Robert E. Whouley.

KIRK, J.   Each of the defendants was indicted, tried and found guilty on two indictments, one charging possession of burglarious implements, the other charging breaking and entering a building in the nighttime with intent to commit larceny.   The cases were tried under G. L. c. 278, §§ 33A–33G, and are before us on appeals accompanied by assignments of error which are the same for each defendant and apply to all of the indictments.

On March 20, 1966, about 4:20 A.M. the defendants and a third individual were observed by two police officers, Noseworthy and Stearns, as the defendants were lowering a bulkhead door which was used to secure the entrance to the cellar of a café on Joiner Street in Charlestown.   The third individual had a tire wrench in his hand which he dropped as the police approached.   One section of the bulkhead door had been ripped apart.   The three men were arrested.   Officer Stearns, the arresting officer, told the defendants that he wanted no statement from them and that they had a right to remain silent.   A fourth individual was found in the cellar.[2]   At the station house the men were put in cells.   At 7 A.M. they were taken to police headquarters at Boston where they were fingerprinted.   At 11 A.M. the defendants were released on bail.   At no time from their arrest to the time of trial were the defendants interrogated.   Nor did they make any statements to the police.   They were represented by counsel at the hearing on probable cause.

On May 25, 1966, a "Motion for Appropriate Relief"[3] was filed on behalf of each defendant.   The motions, in substance, asked that the indictments be dismissed on the ground that the right of each defendant "to make a phone call and his right to communicate with friends or counsel guaranteed by" G. L. c. 276, § 33A, art. 12 of the Declaration of Rights of the Constitution of the Commonwealth, and the Sixth and Fourteenth Amendments to the Constitution of the United States were violated.   In supporting af-

---

[2] The judge told the jury in his charge that there was no evidence that the fourth individual was in any way associated with the other three.

[3] We treat the defendants' motions as motions for directed verdicts.

fidavits accompanying the motions, the defendants contended that because they were unable to use the telephone upon their arrest, they were harmed in the preparation of their defence. The only harm alleged is that the defendants were unable at 4:30 A.M. to start an investigation to get the names and addresses of witnesses, alleged to have been present at the scene of the arrest, who might have helped in the defence of the cases.

A voir dire was held on the motions early in the trial. McGaffigan testified that upon his arrival at the police station he was asked to sign "something" about a telephone call. He declined to do so because he was "intoxicated." Upon his refusal to do so, he was told that he could not make a telephone call. Whouley testified that although he did sign a paper as requested, he was denied the use of the telephone. The paper which he admitted signing bore his signature in three places. When questioned as to how much he had been drinking, Whouley testified that he "was feeling pretty good." At the conclusion of the voir dire the judge denied the motions. After the verdicts of guilty, and the imposition of sentences on June 3, 1966, the judge, on June 14, 1966, filed findings and rulings on the motions. See *Commonwealth* v. *Cook,* 351 Mass. 231, 234. These were, in substance, that each defendant was informed of his right to use the telephone; that the "prime reason" each defendant requested use of the telephone was to be bailed; that there were no persons available who might have witnessed the defendants' movements shortly prior to their arrest; and that the one person whom the defendants recognized at the scene, and who testified at the trial, did not observe the defendants until after the police had arrived and were in the process of arresting the defendants. The judge concluded "that no prejudice resulted to either of these defendants from the denial . . . of an opportunity to use the telephone at the police station, and that any delay resulting therefrom was not productive of any harm to either of them."

We find nothing in the assignments of error which requires reversal of the judgments.

1. Assignments 1, 2 and 4 relate to the judge's refusal to dismiss the indictments against the defendants. The defendants contend that although it may be conjectural whether witnesses could be found, the denial of their constitutional rights (the Sixth and Fourteenth Amendments to the Constitution of the United States, and art. 12 of the Declaration of Rights of the Constitution of our Commonwealth) and their statutory right (G. L. c. 276, § 33A[4]) requires directed verdicts without a showing of prejudice.

The contention is without merit with respect to the defendants' Federal constitutional rights. The argument was raised and was rejected in *Crooker* v. *California*, 357 U. S. 433, 438–441, by the Supreme Court of the United States: "In the absence of any confession, plea or waiver — or other event prejudicial to the accused — such a doctrine would create a complete anomaly . . . ." 357 U. S. at 440.

The defendants' contention is also without merit with respect to our own constitution. This court has held in largely similar circumstances that the use of the telephone by a person in custody is not a right guaranteed by art. 12 of the Declaration of Rights of the Constitution of our Commonwealth. *Commonwealth* v. *Mangan*, 293 Mass. 531. Although that decision was rendered prior to the enactment of St. 1945, c. 205 (the original predecessor of G. L. c. 276, § 33A), neither the original nor the amended statute affects the holding or underlying reasoning in the *Mangan* case. A statute may be enacted to aid in the enforcement of a constitutional right, but it is not a vehicle for the creation of a new constitutional right.

Nor do we think that in the circumstances of these cases the violation of G. L. c. 276, § 33A, entitles the defendants

---

[4] "The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

to directed verdicts. No penalty or other sanction is imposed for a violation of the statute. Under similar statutes in other jurisdictions, the officer who violates the statute commits a misdemeanor. See, e.g., Alaska Sts. § 12.25.150; Cal. Penal Code Ann. § 851.5 (Deering); Iowa Code § 755.17; Mo. Rev. Sts. § 544.170; N. H. Rev. Sts. Ann. § 594:15–17; N. C. Gen. Sts. § 15–47; Ohio Rev. Code § 2935.14 (Baldwin). We have found no statute which, having provisions similar to G. L. c. 276, § 33A, does not also provide for a penalty.

Notwithstanding the absence of any express penalty in our statute, we said in *Commonwealth* v. *Bouchard,* 347 Mass. 418, 421: "Violation of § 33A, if productive of harm . . . might be ground for sustaining exceptions, but should not entitle the defendant to a directed verdict of acquittal." What we said in the *Bouchard* case, however, is not applicable to the cases now before us. The trial judge justifiably found that the defendants were not harmed by the violation of G. L. c. 276, § 33A. It follows that their motions for directed verdicts on this ground were properly denied. See *Commonwealth* v. *Bouchard,* 347 Mass. 418.

2. Other assignments of error require no extended comment.

The defendants assign as error the judge's refusal to admit in evidence the testimony of Officer Noseworthy as to what he observed at the same time an observation had been made by Officer Stearns (assignment 3). We need not discuss whether the testimony was properly excluded. The transcript shows that the excluded line of questioning was later pursued without objection and that Officer Noseworthy testified to what his first observations were, which observations occurred "approximately the same point where Officer Stearns said he first observed these men."

Assignment 5 relates to the denial of the defendants' motion for a view. Diagrams of the area were used in connection with the testimony. The denial of the motion for a view was within the judge's sound discretion which was not abused. *Commonwealth* v. *Nassar,* 351 Mass. 37, 47, and cases cited.

Assignment 6 relates to an alleged prejudicial remark made by the prosecutor at the outset of his argument: "Mr. Foreman and gentlemen, the judge will instruct you among other points of the law, one, presumption of innocence, and the other, reasonable doubt. Might I say if there is any presumption of innocence in those defendants, don't get that mixed up with all cops are liars. Don't get that mixed up. That isn't a presumption. It shouldn't be with jurors. Maybe with some people; that is a presumption with some people." The transcript shows that much of the cross-examination of the two police officers by the defendants' counsel was intended to bring out possible inconsistencies in their testimony both as between them and as compared with the testimony of each at the probable cause hearing. The prosecutor's remarks appear intended to answer the defence counsel's argument on the issue of inconsistency and were within the bounds of legitimate argument. See *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 27–28. In any event, the judge's comment in passing on the objection, and the instruction in his charge to the jury that anything said in closing arguments is not evidence, adequately cautioned the jury. See *Commonwealth* v. *Perry,* 254 Mass. 520, 531.

*Judgments affirmed.*