**Harold Iven MARQUARDT, Appellant,**

**v.**

**W. Roger WEBB (formerly E. Wayne Lawson), Commissioner of Public Safety, and the Department of Public Safety, State of Oklahoma, Appellees.**

**No. 47976.**

Supreme Court of Oklahoma.

Jan. 20, 1976.

Gerald L. Nurdin, Enid, for appellant.
Stephen G. Fabian, Jr., Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellees.

BARNES, Justice:

Appellant, Harold Iven Marquardt, a self-employed truck driver dependent upon his driver's license for his livelihood, was ordered by the Commissioner of Public Safety, under authority of the Implied Consent Law, to surrender his license for a period of six months. The District Court affirmed, and Appellant brings this appeal.

The events forming the basis for these proceedings are briefly summarized. Appellant testified that on May 12, 1974, he parked his automobile on East Maple Street in Enid, Oklahoma, and drank several beers. Thereafter, he started the car, turned on the air-conditioner and lay down to sleep. A police officer testified he observed Appellant slumped forward over the steering wheel, appearing to be asleep in his vehicle, which was properly parked in a parking space with the motor running. The officer, thinking Appellant might be ill or having a problem, rapped on the window of the car. When Appellant gave no response, he opened the door. The record reflects the officer then talked with Appellant, smelled alcohol, noticed Appellant's speech seemed slurred, and asked Appellant to step out of the car and walk on the sidewalk. At one point the officer noticed Appellant was wearing only socks, and when asked to put on his boots Appellant put them on the wrong feet.

Thereafter, the officer arrested Appellant for being in actual control of a motor vehicle while under the influence of alcohol and advised him of his rights. The officer requested the Appellant to submit to a chemical test to determine the alcoholic content of his blood, at which time the Appellant refused.

Upon receipt of a sworn report from the officer as to the foregoing events, the Department of Public Safety issued a notice of revocation to Appellant stating that his driver's license would be revoked in thirty days and that he had thirty days within which to make a written request for a hearing on the revocation. The request was five days out of time and the hearing was denied.

Thereafter, Appellant filed a mandamus action, seeking an order from the Court, ordering the Department of Public Safety to grant him a hearing. Apparently the Department opted to allow the Appellant

an opportunity to be heard rather than expend time in defending the mandamus action. Following a hearing, revocation of Appellant's driver's license was sustained. At no time has Appellant been without his driver's license as the revocation has been stayed during the pendency of this action.

In the present appeal, Appellant urges as error that: (1) The trial court erred in granting jurisdiction to the Department of Public Safety since there was no legal arrest, and that the Implied Consent Law (47 O.S. § 751) is not applicable. (Appellant contends this is distinguished from cases where plaintiff is found not guilty); (2) the trial court erred in allowing the Department of Public Safety to deprive Appellant of his only means to earn a livelihood, in violation of his constitutional and civil rights; (3) the trial court erred in granting jurisdiction to the Department of Public Safety inasmuch as they failed to comply with the law requiring the Oklahoma Commissioner of Public Safety to grant a person an opportunity to be heard within ten days after receipt of request for administrative hearing; and (4) the trial court erred in failing to consider licensee's previous driving record to determine that said order was for a longer period of time than the facts warranted.

By way of relief, Appellant seeks a reversal of the trial court's judgment, thereby prohibiting the Department of Public Safety from revoking his driving privileges.

■ Appellant first contends the trial court erred in granting jurisdiction to the Department of Public Safety, that there was no legal arrest, and, therefore, that the Implied Consent Law was inapplicable.

47 O.S. § 754 provides in pertinent part:

" . . . *The hearing shall* be recorded and its scope shall *cover the issues* of whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways, streets or turnpikes while under the influence of alcohol or intoxicating liquor, *whether the person was placed under arrest,* whether he refused to submit to the test or tests, * * * ." (Emphasis ours)

This language, in our opinion, directly refutes Appellant's contention that the administrative body (Department of Public Safety) was without jurisdiction. The issue of whether the person was placed under arrest is properly triable by the administrative body as well as the District Court. In the instant case the District Court made the following finding:

"*He was arrested* and taken to jail and still refused a blood test. One of the officers who arrested him filed his Affidavit with the Commissioner reporting what was done. The Commissioner, under the law, had to suspend his license for six months. Nothing has been shown that these facts don't prevail." (Emphasis ours)

In the criminal trial involving Appellant, the officer testified that the accused had requested a phone call immediately when taken into the police station and that he, the officer, did not know what happened after that as he was no longer there.

59 O.S. § 1338 provides for use of the telephone as follows:

"Each person arrested shall have an opportunity to use the telephone to call his attorney and bondsman before being placed in jail, or within six hours thereafter."

Appellant has at all times contended that he repeatedly asked to use the telephone following his arrest and was denied a telephone call for thirteen and one-half hours.

■ Appellant suggests that failure of the police to allow him to use a telephone within six hours after being placed in jail makes the initial arrest unlawful. However, Appellant cites no authority for this proposition, and we have found none. We note that the right to use the telephone after arrest is statutory, not constitutional. *Grimes v. State,* 512 P.2d 231 (Okl.Cr. App.1973).

■ While there are no Oklahoma cases specifically dealing with this question, there are a limited number of cases from other jurisdictions dealing with similar statutory provisions. Some of those cases provide that the sanction for a violation of such a statute would be suppression of the evidence obtained after the denial of the right to use the telephone. Other cases hold such a violation may be remedied by civil and/or criminal action against the law enforcement officer for denying the person an opportunity to use the telephone. See: *Commonwealth v. Murray,* 359 Mass. 541, 269 N.E.2d 641 (1971); *Commonwealth v. Bouchard,* 347 Mass. 418, 198 N.E.2d 411 (1964); *Commonwealth v. McGaffigin,* 352 Mass. 332, 225 N.E.2d 351; and *Commonwealth v. Jones,* 287 N.E.2d 599 (1972). However, we find no cases holding the arrest unlawful under such circumstances, thereby dismissing the charges.

Regardless of whether the evidence is suppressed, or criminal or civil sanctions against the law enforcement officers involved are invoked, the case at bar will be unaffected, as there was no evidence obtained subsequent to the alleged denial of the use of a telephone.

The crux of Appellant's case is that there being no legal or lawful arrest, there was no arrest. Thus, Appellant contends that under 47 O.S. § 753 the Department of Public Safety was without jurisdiction, as the statute requires a showing of a valid and legal arrest. 47 O.S. § 753 provides:

"*If a* conscious *person under arrest* refuses to submit to chemical testing, none shall be given, but the Oklahoma Commissioner of Public Safety, *upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways, streets or turnpikes while under the influence of alcohol or intoxicating liquor, and that the person had refused to submit to the test* or tests, shall revoke his license to drive and any nonresident operating privilege for a period of six months; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the Oklahoma Commissioner of Public Safety shall deny to the person the issuance of a license or permit for a period of six (6) months after the date of the alleged violation, subject to review as hereinafter provided." (Emphasis ours)

In support of his position, Appellant argues that the judgment of the Special Judge in the criminal proceeding sustained a motion to dismiss on the ground that the arrest was illegal, and that because the State of Oklahoma failed to appeal that judgment, the District Court and Supreme Court of Oklahoma are estopped by judgment and the doctrine of res judicata to deny that there was an illegal arrest. However, as Appellee points out, there has been nothing submitted by way of proof. The court in the criminal proceeding did nothing more than sustain a motion to dismiss. It did not find the arrest was illegal. Furthermore, Appellant offers the minute of the criminal proceedings now for the first time, as an Exhibit attached to his Petition in Error. Thus, from our review of the case at bar, we find nothing to indicate the arrest was not a legal and lawful arrest.

■ We further note the well-recognized rule in Oklahoma that the acquittal of a defendant in the criminal matter on the charge of driving under the influence of intoxicating liquor is not a bar to the suspension of the driver's license and that such finding has no bearing on the civil proceedings revoking his driver's license under the Implied Consent Statutes. In *Robertson v. State ex rel. Lester,* 501 P.2d 1099 (Okl.1972), this Court said at page 1103:

"The implied consent law is not a criminal proceeding. It is a civil administrative proceeding separate and distinct from the criminal action on a charge of driving while intoxicated. Each proceeds independently of the other. *Krue-*

ger v. Fulton, 169 N.W.2d 875, 877 (Iowa 1969). *The fact that in the criminal proceedings the driver is not proven beyond a reasonable doubt to have been driving while intoxicated has no bearing on civil proceedings under the implied consent statutes revoking his driver's license for refusal to submit to a chemical test. Fritts v. Department of Motor Vehicles, 6 Wash.App. 233, 492 P.2d 558, 562 (1971)."* (Emphasis ours)

 To the same effect as the language contained in the later case of *Application of Baggett*, 531 P.2d 1011 (Okl. 1974), in which this Court quoted *Commonwealth of Pennsylvania v. Abraham*, 7 Pa.Cmwlth. 535, 300 A.2d 831 (1973), dealing with the question of res judicata:

"Despite the fact that the charge against appellee was dismissed, there remains the separate refusal to take the test. For the simple reason that the suspension was a civil proceeding, and the acquittal was a result of a criminal proceeding, the Secretary acted properly. Accord, *Appeal of Walker*, 20 Ches.Co. Rep. 154 (1972). As stated in Annot., 96 A.L.R.2d 612, 614 (1964),

" 'However, where those circumstances which were the basis of the revocation or suspension were also the basis of charges in a previous criminal case, it might seem to the layman driver that the state has been allowed to try him twice for the same offense, and his notions of fair play might be injured all the more where previous criminal prosecution resulted in a determination he was "not guilty." Notwithstanding the notions of fair play entertained by laymen, however, what little authority there is on the subject holds that the later proceeding to revoke or suspend his license, since not intended as a punishment of the driver but designed solely for the protection of the public in the use of the highways, does not in the legal sense subject him to double jeopardy or punishment, *nor is a judgment of acquittal in the previous crim-*

*inal case res judicata on the issue of guilt or innocence in the later proceeding,* for, as stated by [*Commonwealth v. Funk*, 323 Pa. 390, 186 A. 65 (1936)], such judgment does not have any probative value in the subsequent proceeding beyond the mere fact of its rendition, the reason for this being found in the nature of the criminal proceedings and the type of proof required therein, *for in a criminal proceeding the guilt of the accused must be established beyond a reasonable doubt, whereas in a civil proceeding to revoke a license it is sufficient if the offense is established by a preponderance of the evidence.'* " (Emphasis ours)

We think this language refutes Appellant's estoppel and res judicata argument.

 Appellant's second contention is that the trial court erred in allowing the Department of Public Safety to deprive Appellant of his only means to earn a livelihood in violation of his constitutional and civil rights, inasmuch as the mere affidavit of the arresting officer stating that in his opinion accused was in actual physical control of a motor vehicle while under the influence of intoxicating liquor is not due process of law. See 47 O.S. § 753, supra.

The question of the constitutionality of the Oklahoma Implied Consent Law was decided by this Court in *Robertson v. State*, 501 P.2d 1099, supra, when we said:

"The argument that the implied consent statutes violate the due process provisions of the 14th amendment of the United States Constitution and Article 2 § 7 of the Oklahoma Constitution has been proposed in other jurisdictions and has been consistently rejected (Cases cited) * * * *

"The Oklahoma Implied Consent Statute adequately and fully contain all of the necessary constitutional safeguards. The statute offers a choice to a conscious person arrested by a law enforcement officer on the basis that he had

reasonable grounds to believe that the motorist had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or intoxicating liquor. An individual suspected of being in violation of the statute has the option to submit or to refuse the chemical test. No test may be taken by force. The driver may refuse to submit, but his refusal is an action for which the statute exacts a penalty."

This decision was followed in *Application of Baggett,* supra, where the Court said:

"We hold that the means used by the Implied Consent Laws to achieve the goal of public safety does not violate a person's substantive due process. *Robertson,* supra."

■ Appellant's next contention is that the trial court erred in granting jurisdiction to the Department of Public Safety because the granting of an opportunity to be heard within ten days after receipt of request for administrative hearing is mandatory.

47 O.S. § 754 provides in pertinent part:

"Upon the written request of a person whose privilege to drive has been revoked or denied the Oklahoma Commissioner of Public Safety *shall grant* the person an *opportunity to be heard within thirty (30) days after the receipt of the request, but the request must be made within thirty (30) days after the notice of the revocation . . . .*" (Emphasis ours)

At page 8 of the transcript of the appeal to the District Court of Garfield County, No. C–74–768, counsel for the Department of Public Safety states: "It appears that he mailed it on the 4th of July and the time expired on the 5th of July and we got it on the 10th and we denied his hearing."

Appellant argues that the "notice of revocation" was mailed to the accused and specifically states that "a telephone call will not be accepted as a request for hearing, but any inquiry regarding this order should be directed to the Driver Improvement Bureau at the above address." Appellant asserts that by this language the Department of Public Safety ·designated the United States · Postal Service as their agent, based on the theory that delivery to the agent is delivery to the principal. Therefore, Appellant contends delivery to the United States Postal Service was delivery to the Department of Public Safety on July 4th, 1974, within the statutory period, but cites no cases in support of his position. Although it appears to us that the request for hearing was filed late by the Appellant and that there was a delay in holding the hearing, this question became moot when an "agreed to" hearing was held on August 22nd, 1974. The record does not reflect that the Appellant has been prejudiced in any way. Appellant was given a hearing, has never been without his driver's license, and has continued to drive throughout the pendency of this action.

■ Appellant's final contention is that the trial court erred in failing to consider licensee's previous driving record to determine that the order was for a longer period of time than the facts warranted. Such a contention was directly answered by this Court in *State ex rel. Okl. Department of Public Safety v. Kopczynski,* 499 P.2d 1384 (Okl.1972), and our recent holding in *Kuykendall v. Department of Public Safety,* 544 P.2d 516, Oklahoma Supreme Court, 1975, which cited *Kopczynski:*

"In *State ex rel. Okl. Dept. of Pub. Safety v. Kopczynski,* 499 P.2d 1384 (1972) this court held a district court has no authority to modify an order of revocation by reducing the period to less than six months, in an appeal under § 755 of a revocation order provided by § 753. * * *

"Section 755 was amended by Laws 1975, effective May 13, 1975, through the addendum of language to allow the district court to make the type of modifi-

cation here involved. That addition to the section was not available to Kuykendall in this appeal. Section 755 as a part of the Implied Consent Law originated in 1967 and became effective January 1, 1969. *Kopczynski,* supra, was in July, 1972. The 34th Legislature has since met in the First Regular Session, 1973, and the Second Regular Session, 1974. The amendment came in the 35th Legislature, First Regular Session, 1975. That amendment denotes a change in the law by the legislature. * * * We do not agree the 1975 amendment expresses the intent of the 1967 legislature.

"The district court had no authority at the time it entered the order appealed from to modify the revocation so as to allow the licensee to drive to and from work or on the job."

In view of the foregoing, we are of the opinion the trial court did not err in affirming the order of revocation of Appellant's driver's license.

Affirmed.

WILLIAMS, C. J., and DAVISON, BERRY and LAVENDER, JJ., concur.

HODGES, V. C. J., and SIMMS, J., concur in part and dissent in part.

IRWIN and DOOLIN, JJ., dissent.

SIMMS, Justice (concurring in part, dissenting in part):

I respectfully dissent only to that portion of the majority opinion holding the reviewing trial judge had no authority to take into consideration the past driving record of appellant and to entertain modification of the period of time suspension for the reason set forth in my Dissent in *In Re: Turner,* 1976, Okl., 544 P.2d 1261.

I am authorized to state that HODGES, V. C. J., concurs in part, and dissents in part for the reasons herein stated.