Elijah Barrow, Jr. and his nephew, Richard Anthony Barrow, were separately indicted for the burglary of a 1977 Chevrolet van belonging to Billy S. Little. Their cases were consolidated for trial and both defendants were convicted. Elijah was sentenced as a habitual offender to six years' imprisonment. Richard was sentenced to eight years' imprisonment.
 I
Elijah argues that the trial court erred in admitting into evidence a latent fingerprint lifted from the van two days after the burglary occurred without any showing that the print was placed on the van during the burglary. He argues that there was a break in the chain of custody of the fingerprint because he had access to the van after the burglary and the State could not prove when the fingerprint was placed on the van.
The real question in this issue involves relevancy and not the chain of custody. "Relevancy is the determination of whether there is sufficient connection between fact A and inference B to allow the fact to be placed before the jury." C. Gamble, McElroy's Alabama Evidence § 21.01 (1), at p. 15 (3rd ed. 1977). The appellate courts of Alabama have sanctioned a liberal test of relevancy allowing evidence of a fact to be admitted if it has any probative value. The test is "that fact A is relevant if there is any logical relationship between it and the ultimate inference B for which it is offered." McElroy, supra. "Where the proffered evidence has a tendency, even though slight, to enlighten the jury as to the culpability of the defendant, then it is relevant and properly admissible."Waters v. State, 357 So.2d 368, 371 (Ala.Cr.App.), cert. denied, Ex parte Waters, 357 So.2d 373 (Ala. 1978). "The test of probative value or relevancy of a fact is whether it has any tendency to throw light upon the matter in issue even though such light may be weak and fall short of its intended demonstration." Tate v. State, 346 So.2d 515, 520 (Ala.Cr.App. 1977). "It is not necessary that each item of testimony, taken alone, be conclusively shown to prove the guilt of the defendant; but the question is whether each fact, in connection with all others, may be properly considered in forming a chain of circumstantial evidence tending to prove the guilt of the accused." Russell v. State, 38 So. 291, 296 (Ala. 1905).
The fingerprint in this case is analogous to the mud found on the accused's trousers in Sims v. State, 146 Ala. 109,41 So. 413, 415 (1906):
 "The place of the alleged crime was undisputed, and it was competent to prove that mud on the trousers of the defendant corresponded with the mud at the place where the offense was said to have been committed. It was a circumstance, however slight, proper for the consideration of the jury as tending to show that the defendant had been at the alleged place; and to this end it was permissible *Page 836 
for the witness to testify that the mud on the defendant's pants resembled the mud at the place of the alleged crime."
 II
Elijah argues that there was an improper search and seizure.
The burglary occurred on the evening of April 5, 1985, at the Red Carpet Inn. Mr. Little's van was in the parking lot directly outside his room. Upon hearing sounds outside, he went to check his van and discovered one man in his van, a second man standing beside a car which had backed in next to his van, and a third man sitting in that car. The three men ran when he pointed his pistol at them and asked what they were doing.
After the police arrived, Mr. Little and a police officer were walking around the car which had been left at the scene parked next to Mr. Little's van. This car belonged to Elijah. Little saw a carton of Marlboro cigarettes inside the car and told the officer that he saw "something that might possibly be his." Little checked his van, determined that his cigarettes were missing, and told the officer, "Those cigarettes may be mine." The officer then reached inside Elijah's car and removed the carton, which contained four packs of cigarettes bearing tax stamps from Jefferson County, just as those that had been stolen from the van.
From the manner in which Elijah left his car at the crime scene, it may fairly be concluded that there was no justified expectation of privacy in that car. "Courts have also found cars to be abandoned when it appeared that the operator of the vehicle left the car behind in an effort to avoid apprehension by the police." W. LaFave, 1 Search and Seizure § 2.5 at p. 353 (1978). "By fleeing, . . . the defendant abandoned his expectation of privacy in the vehicle." Prock v. State,471 So.2d 519, 520 (Ala.Cr.App. 1985). Additionally, the seizure was justified upon the doctrine of plain view and exigent circumstances. 1 Search at § 2.2, p. 244. See Colorado v.Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980).
 III
Elijah contends that a written consent to search that he had signed should not have been admitted into evidence because the document was not properly and timely produced by the State.
Ten days before trial, the trial court granted Elijah's motion for discovery "as to . . . examination of all exhibits to be used during the trial of this case."
After the trial had begun, the prosecutor gave defense counsel "a copy of a consent signed by Elijah Barrow." In response to the trial judge's question, the prosecutor stated that before trial he did tell defense counsel that "there was a consent, a written consent" signed by her client." The trial judge stated that if the prosecutor had not told defense counsel about the consent he "wouldn't let it in." Defense counsel denied that the prosecutor told her that there was a written consent or who had consented.
The trial judge was in the best position to determine whether or not the State violated his discovery order. Under the circumstances presented in the record, we find no abuse of discretion inasmuch as defense counsel has not demonstrated prejudice by the tardy disclosure and because it would not have affected the outcome of the trial. Ex parte Duncan,456 So.2d 362, 364 (Ala. 1984); Hurst v. State, 469 So.2d 720, 723
(Ala.Cr.App. 1985).
 IV
Both Elijah and Richard argue that the consolidation of their indictments denied them a fair trial. Their allegations of prejudice are general and were addressed by this Court inHolsemback v. State, 443 So.2d 1371 (Ala.Cr.App. 1983). Additionally, "severance will be granted only if a defendant can demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense. . . . It is not enough for the defendant to show that *Page 837 
acquittal would have been more likely had the defendant been tried separately," and "[a] defendant does not suffer compelling prejudice simply because much of the evidence presented at trial is applicable only to his codefendants, . . . or because the prosecution introduces damaging evidence concerning a codefendant's reputation or criminal record."United States v. Walker, 720 F.2d 1527, 1533 (11th Cir. 1983), cert. denied, Gustin v. United States, 465 U.S. 1108,104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).
 V
Applying the principles stated in Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), we find that Elijah Barrow's conviction is supported by a wealth of circumstantial evidence despite the fact that Mr. Little could not identify him as one of the burglars. In addition to his fingerprint on the burglarized van, substantial evidence placed Elijah at or near the van shortly after the burglary was discovered. The cigarettes taken in the burglary were found in his car which was parked next to the van. Otis Knight, Elijah's brother and the third man involved in this crime, gave a confession to the police directly implicating Elijah in the burglary and testified against Elijah and Richard at trial. Richard also gave a statement implicating and incriminating Elijah.
Eyewitness identification of an accused as the perpetrator of the crime is not required. "It is not necessary for a conviction in a criminal case that evidence be direct, positive, and of the eyewitness variety, but a defendant may be convicted on circumstantial evidence if it is compatible with the test of sufficiency required in such cases." Locke v.State, 338 So.2d 488, 490 (Ala.Cr.App. 1976). "The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence."Tice v. State, 460 So.2d 273, 279 (Ala.Cr.App. 1984). Elijah's motion to exclude the State's evidence and motion for a judgment of acquittal were properly denied.
 VI
Richard contends that he was effectively denied his Sixth Amendment right to counsel when Opelika Police Detective Danny Cooper denied him "the right to make a phone call or to attempt to contact an attorney or any member of his family for a period from the time of arrest until after 3:00 P.M. on the following day." Appellant Richard Barrow's brief, p. 11. At trial, this was never argued as a ground for suppressing Richard's confession.
The burglary occurred at approximately 11:00 on the night of April 5, 1983. Richard was apprehended within close proximity to the motel shortly after the burglary had occurred. He was booked and placed in jail at approximately 1:00 on the morning of April 6th. Detective Cooper told the jailer not to allow Richard and Otis Knight to make a telephone call "until the next morning." The Detective testified that he was "worried" about the van being disturbed because it had been left at the motel and that he would not allow a suspect to make a phone call "if it is going to hinder my investigation." He stated, "When there is an investigation where evidence may be destroyed or something may happen to some evidence, we hold off a while on the phone call."
However, at 10:31 that same morning, Detective Cooper advised Richard of his Miranda rights and Richard signed a written waiver.
After Richard made his statement, he asked Detective Cooper to allow him to call his sister. Cooper testified, "I was going to let Richard make a phone call to his sister while he was up there and he said he didn't know the number and he didn't know if they had a telephone or not. Didn't think they had a telephone."
At 3:30 that afternoon, the Detective informed the jailers that Richard could use the telephone. On April 9th, Detective Cooper again advised Richard of his Miranda rights and obtained a statement. *Page 838 
Richard testified at the suppression hearing but did not mention that he had been denied access to a telephone or that he was even aware that he could not make a telephone call. In fact, he did not even mention anything about the telephone in his testimony.
At trial there was no contention that Richard requested to make a telephone call and that that request was denied. The facts do not show that Richard overheard the Detective ordering the jailer not to tell him to use the telephone or that anyone told Richard that he could not make a telephone call.
The record supports the implicit findings of the trial judge in admitting both of Richard's statements that each statement was obtained only after an intelligent, knowing, and voluntary waiver of Miranda rights.
The right to use a telephone is statutory and not constitutional. Grimes v. State, 512 P.2d 231, 233
(Okla.Crim.App. 1973); Marquardt v. Webb, 545 P.2d 769, 771-72
(Okla. 1976). "A statute may be enacted to aid in the enforcement of a constitutional right, but it is not a vehicle for the creation of a new constitutional right." Commonwealthv. McGaffigan, 352 Mass. 332, 225 N.E.2d 351, 354 (1967).
Alabama Code 1975, § 36-10-16, provides:
 "No officer or person having the custody and control of the body or liberty of any person under arrest shall refuse permission to such arrested person to communicate with his friends or with an attorney nor subject any person under arrest to any form of personal violence, intimidation, indignity or threats for the purpose of extorting from such person incriminating statements or a confession. Any person violating the provisions of this section shall be guilty of a misdemeanor."
The violation of a suspect's statutory right to use a telephone does not render the initial arrest unlawful.Marquardt v. Webb, supra. However, the violation of this statutory right, "`if productive of harm,' might be ground for sustaining objections." Commonwealth v. Murray, 359 Mass. 541,269 N.E.2d 641, 644-45, n. 2 (1971).
Our statute merely provides that an arrested person has a right "to communicate with his friends or with an attorney"upon request. It does not require that the arrested person be informed of this right. In construing a similar statute, the Supreme Court of Louisiana held:
 "Article 230 C.Cr.P. merely provides that an arrested person has the right to procure counsel and to use a telephone or send a messenger for the purpose of communicating with counsel and his friends. Appellants were given the Miranda warnings and were fully informed of their rights in this case. They had the statutory right to use a telephone, had such a request been made. But they made no request. The specious argument seems to be that the police should have particularly informed them of such right and failure to do so renders the confessions tainted. However, the statute does not require this and neither does the Miranda decision." State v. Cripps, 259 La. 403, 250 So.2d 382, 388-89 (1971).
The footnote to this paragraph states:
 "We assume the framers of the Miranda bill of rights must have believed the use of the telephone to be so commonplace in this country that even the most ignorant arrestee, having been informed of his rights and desiring to communicate with counsel or friends, could make a simple request for such use. At any rate, Article 230 C.Cr.P. does not require the custodian of the arrestee to inform the latter of his right to use the telephone and this Court is not inclined to amend the statute in this respect believing that this is within the sphere of legislative action." Cripps, 259 La. at 419-422, 250 So.2d at 389, n. 1.
See also State v. White, 321 So.2d 491, 493 (La. 1975). TheMiranda procedural safeguards are required only when a suspect is interrogated in a custodial setting. Miranda *Page 839 v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694
(1966).
Nothing in Alabama law authorizes an officer to hold an arrested person incommunicado "beyond the immediate necessities of the arrest and the circumstances of custody itself." Statev. Scharf, 288 Or. 451, 605 P.2d 690, 692 (1978). "[C]ourts should suppress unfavorable evidence gained as a result of denying a defendant the right to use a telephone" unless the State "can show beyond a reasonable doubt that the evidence is untainted by the deprivation of the defendant's rights."Commonwealth v. Jones, 362 Mass. 497, 287 N.E.2d 599, 603
(1972). See also United States v. Bullock, 441 F.2d 59, 64 (5th Cir. 1971) (four-hour delay after specific request in permitting arrested suspect to telephone attorney resulted in no prejudice, although delaying practice not condoned).
Richard had an eleventh-grade education and was twenty-two years old. While the fact that a suspect has been held incommunicado is a significant factor in determining the voluntariness of a subsequent confession, Sims v. Georgia,389 U.S. 404, 406-07, 88 S.Ct. 523, 525, 19 L.Ed.2d 634 (1967);Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761,16 L.Ed.2d 895 (1966); Haynes v. Washington, 373 U.S. 503,83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), it must be considered with the totality of circumstances involved in each particular case.Hutto v. State, 278 Ala. 416, 423, 178 So.2d 810 (1965).
Although Richard was not informed upon his arrest that he had a right to communicate with his friends or attorney, the fact remains that before he waived any right or gave a statement he was advised of his right to counsel and of his right to counsel's presence.
Under the very limited circumstances of this case, we find that Detective Cooper's order to the jailer that Richard not be permitted to use the telephone did not deny Richard his right to counsel where he was advised of that right before any statement was taken.
 VII
After interrogating Otis Knight, Detective Cooper interviewed Richard Barrow a second time. Before obtaining the second statement, the officer informed Richard of his Miranda rights and Richard signed a written waiver. In requesting a second statement, Detective Cooper told Richard that he "didn't think he told [him] the whole truth in the first statement," that Otis said he was involved, and that he "thought he had his [Richard's] fingerprints on that cigarette carton."
Richard argues that Cooper lied about the fingerprints in order to induce his statement. When questioned about this, Detective Cooper testified that in his "judgment" he "thought" he had Richard's fingerprints but that he did not "know" and that he was not an expert on fingerprint identification.
Alabama follows the general rule that "a confession is not inadmissible merely because it was induced by a trick or misrepresentation which was not reasonably calculated to lead the accused to confess falsely." C. Gamble, McElroy's AlabamaEvidence § 200.07 (7) at p. 437 (3rd ed. 1977), citing Fincherv. State, 211 Ala. 388, 100 So. 657 (1924). We find no error in the admission of the confession.
 VIII
Richard also contends that his written confessions were inadmissible because they did not substantially and accurately reflect what he said. Detective Cooper testified that he did not write down everything Richard told him but that he "took the information pertinent to the case" and "wrote what he told me on the statement."
After each confession Richard was given the opportunity to read the statement, and then Cooper read the statement to Richard and asked Richard to make any deletions, additions or corrections. Cooper testified that, for each statement, Richard said, "that was the way it happened" and signed the statement. The last sentence of each statement is: "The above 1 1/2 page *Page 840 
statement has been read to me and by me and it is true and correct."
"The state is not required to prove all that the accused said when he confessed because the accused himself has the right to prove the remainder of his statement." McElroy, § 200.17 at p. 446. "A confession is not rendered inadmissible because it is not verbatim as related by the accused and is admissible if its transcription is substantially as related and affirmed by the accused." King v. State, 355 So.2d 1148, 1150 (1978). "The fact that the written statements signed by the defendant are not exactly, word for word, what he told the investigators is without legal significance." Corbin v. State, 412 So.2d 299,301 (Ala.Cr.App. 1982). See also Hobbs v. State, 401 So.2d 276,282-83 (Ala.Cr.App. 1981); Carpenter v. State, 400 So.2d 417,423 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (1981).
 IX
Richard Barrow's conviction is supported by the evidence. Richard was apprehended in the vicinity of the burglary shortly after its commission. His uncle, Otis Knight, implicated Richard in the burglary as the "lookout" while Elijah Barrow broke into the van. In his second statement, Richard admitted witnessing the burglary but claimed that he "was standing about 25 or 30 yards away because [he] didn't want anything to do with what Elijah was doing." His guilt or innocence was a question for the jury.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.