[No. 40619.    Department Two.    July 3, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. DAMON LOPEZ
BROWN, *Appellant.**

*Frederic G. Fancher,* for appellant (appointed counsel for appeal).

*Donald C. Brockett* and *Philip E. Rosellini,* for respondent.

ENNIS, J.†—Damon Lopez Brown was convicted by a jury of the crime of grand larceny. He appeals from the court's order denying his motion for a new trial, as well as from the judgment and sentence.

Defendant assigns as error the court's refusal to grant a new trial on either of the following grounds: (1) The identification procedure used in this case was so impermissibly suggestive as to give rise to the likelihood of irreparable

*Reported in 458 P.2d 165.

†Judge Ennis is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

misidentification; and (2) Defendant was prejudiced by the prosecutor's repeated attempts to introduce hearsay evidence which conveyed to the jury the inference that the state had a witness, never produced, who could name defendant as the guilty party.

The facts are as follows. At 3 a.m. on April 18, 1968 Clinton O. Gilbertson, the victim of this crime, was driving his pickup truck in downtown Spokane when he was flagged down by his assailant, a Negro who asked for a ride. The point at which Gilbertson picked up his passenger was less than a block from an all-night restaurant known as Sam's Barbeque Pit. Upon reaching a residence in the east central part of Spokane, Gilbertson parked and spent 10 to 15 minutes talking to his passenger. The dome light was on during this conversation. The passenger then asked to borrow a dollar. When Gilbertson removed his wallet, his assailant grabbed it and fled.

Mr. Gilbertson notified the police and furnished them with a description of his passenger. He was shown three photographs, one of which he identified as his assailant, the defendant in this case. At the trial, some months later, Gilbertson again identified defendant. He had not seen him since the night of the occurrence.

Since no argument is directed to the initial photographic identification we assume that there was nothing irregular in this procedure.

■ Defendant objects to the in-court identification for the reason that defendant was the only Negro in the courtroom. We find this objection to be without merit. Defendant's racial attributes were a mere identifying characteristic. We can envision white defendants who could well be the only one in the room with red hair, a crew cut, or a beard. The prosecution is not required to pack the courtroom with blacks or people who resemble a defendant, in order to insure a proper identification.

The defendant's next assignment of error goes to the attempts by the prosecutor to elicit from Officer Roy Allen the hearsay statements of an informant.

Defense counsel's approach entails a projection of the progress of the jury's thinking as the prosecutor's efforts develop. The bracketed material that follows the trial excerpts indicates counsel's reasoning. Quoting the statement of facts, we find the subject broached as follows:

Q. After arriving at Sam's Pit, did you talk with an informant at this place of business? A. Yes. Q. Has this person you talked to that evening given you and the police information in the past that has checked out? MR. LYNCH: I object. THE COURT: The objection is sustained. MR. ROSELLINI: I think it is material—well, all right.

[At this stage the jury becomes aware of the fact that there is an informant.]

Later the prosecutor again asked:

Q. Did this person—what did you ask this person? MR. LYNCH: I object to this. THE COURT: This is hearsay—I must sustain the objection. A conversation between this witness and some man at Sam's Pit in the absence of the defendant would be hearsay and I must sustain the objection. MR. ROSELLINI: With regard to this information, I submit that it was given to the officer by an informant whose name. MR. LYNCH: I object to this in the presence of the jury. THE COURT: I will listen to argument in the absence of the jury but it is my understanding that a coversation which occurs between some outside party and this witness in the absence of the defendant is hearsay and I must sustain an objection to it unless there is some exception to the hearsay rule permitting it to come in.

[Now the jury probably suspects the information sought to be brought out must be fairly important since the deputy prosecutor is quite anxious for them to have this information and the defense attorney is just as anxious for them not to have it.]

Still later, the prosecutor asked:

Q. Officer, as a result of your investigation, were you able to fix in your mind the identity of a possible suspect? MR. LYNCH: I object to that. THE COURT: The objection is sustained.

[The jury now believes that the informer told Officer Allen that Brown was the guilty party.]

Finally, the prosecutor asked:

Q. Back to the day before, your prior testimony was that you went from the police station to Sam's Pit to see if anybody matching the description given to you had been in the Pit that morning. Is that correct? A. Yes, it is. Q. What information with respect to that did you obtain at the Pit that morning? MR. LYNCH: I object to this. THE COURT: We're back into hearsay.

. . .

I can't let the witness narrate what Sam Willis may or may not have told him if the defendant wasn't present when the conversation took place.

[An informer named Sam Willis has named defendant as the guilty party. Instead of merely the testimony of the complaining witness, we now have another person who can point to defendant as the guilty party.]

So goes the defendant's argument. The argument is ingenious, but we cannot accept it.

There was strong evidence upon which the jury could have based its verdict apart from any alleged prejudice stemming from the prosecutor's conduct. First, we have a direct identification by the victim of his assailant. Shortly after the event the victim supplied the police with a superior description of defendant's appearance and clothing, as well as picking him out of a photographic lineup.

■ Defendant, himself testified and admitted his presence in Sam's Pit around 3 a.m. He also confirmed his weight, height, and the clothing worn on the night of the crime. We cannot say that the prosecutor's improper interrogation of Officer Allen presumptively affected the verdict.

Next, we believe that defense counsel's conclusions as to what the jury may have believed at successive stages of the trial is not justified. For one thing, it is well known to those in the legal profession that one *never* knows what a jury is thinking. It may well be that the jury surmised in the beginning that an informer had information helpful to the state's case and that the defense was at pains to keep it out. But we cannot conclude, as defense counsel does, that the

jury believed an informer would name defendant as the *guilty party*.

We quote again the last query by the prosecutor to Officer Allen:

Q. Back to the day before, your prior testimony was that you went from the police station to Sam's Pit to see if anybody matching the description given to you had been in the Pit that morning. Is that correct?

The most that such a question could elicit by way of an answer is that someone answering the description given, was in Sam's Pit that morning. There is no suggestion in any of the state's questions that there was an eyewitness to the crime itself.

Any prejudicial inference created by the prosecutor's questions that defendant was in the vicinity at the inception of the crime was erased when defendant himself took the stand and admitted that he was in Sam's Pit around 3 a.m.

■ Finally, we note that trial counsel, an experienced criminal trial attorney, did not feel that the alleged misconduct of the deputy prosecuting attorney as outlined in appellant's brief, was of enough significance to merit a motion to strike from the record the statements now complained of, nor to request that the jury be instructed to disregard them, nor to move for a mistrial either at that time or on his motion for a new trial. The general rule regarding this is outlined in *State v. Rinkes*, 70 Wn.2d 854, 859, 425 P.2d 658 (1967):

[O]ne cannot voluntarily elect to submit his case to the jury and then, after an adverse verdict, claim error which, if it did exist, could have been cured or otherwise ameliorated by some action on the part of the trial court.

The judgment is affirmed.

HUNTER, C. J., HILL, HALE, and NEILL, JJ., concur.