(No. 40553.—

THE PEOPLE *ex rel.* RICHARD EUGENE BLASSICK, Appellant, v. JAMES CALLAHAN, Appellee.

*Opinion filed January 28, 1972.*

RYAN, J. took no part.

CRAIG M. ARMSTRONG, of WOLSLEGEL & ARMSTRONG, of Ottawa, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and RICHARD E. RICHARDSON, State's Attorney, of Ottawa, (THOMAS J. IMMEL and FRED G. LEACH, Assistant Attorneys General, of counsel,) for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This appeal is from a judgment of the circuit court of La Salle County denying the petition of Richard E. Blassick for a writ of *habeas corpus* and remanding him to the custody of the sheriff of La Salle County under a Governor's warrant issued after a request for the petitioner's extradition had been made by the Governor of Kentucky. The appeal presents two issues: (1) Was the hearing on the petition for *habeas corpus* violative of the requirement of due process? (2) Was the trial court correct in holding that it did not have authority to weigh conflicting evidence on the question whether the petitioner had proved that he had not been in Kentucky at the time of the crime?

On July 17, 1966, at approximately 9:00 A.M., a robbery was committed by three men in the jewelry store owned by Henry Clayton in Hopkinsville, Kentucky. A few days later Clayton identified the petitioner as one of the robbers from photographs shown him by a Hopkinsville police officer. A warrant for his arrest issued and he was taken into custody in La Salle County.

A petition for *habeas corpus* was filed in the circuit court of La Salle County to avoid extradition, and at the hearing on the petition Blassick sought to prove that he was in Illinois at the time the offense was committed. The petitioner testified briefly that he had not been in Hopkinsville, Kentucky, on July 17, 1966. Sandra Porter testified that she had been with him from 9:30 P.M. on July 16, 1966, until 12:30 P.M., July 17, 1966. They had been in a tavern in Elgin from 9:30 on the 16th until about 1:30 A.M. of the 17th, then, she said, they had gone

to a motel at the junction of Routes 20 and 59, four miles east of Elgin. They entered the motel at about 2:00 A.M. and stayed until 9:30 the following morning. After having breakfast together, she testified, the petitioner drove her to a restaurant in Melrose Park.

Jack D. Çatavu, a bartender at the tavern, partially corroborated Porter's story, testifying that he had served the couple from about 11:30 P.M. on the 16th until 1:30 A.M. of the 17th. The owner of the motel testified that at approximately 2:00 A.M. on July 17, 1966, a man resembling the petitioner registered at the motel, but he was unable to identify Blassick positively as the one who had registered. He exhibited a registration card of his motel bearing the signature of "Richard E. Blassick" which indicated that a room was rented under that name sometime after 1:30 A.M. on July 17, 1966. The registrant paid in advance, he said, and he did not see him leave the motel. The registration card was dated July 17, 1966, but it did not indicate any time of registration. Petitioner's mother testified that the signature appearing on the registration card was that of her son. She testified that the petitioner lived with her at 108 W. Elm Street in Streator and had returned to their home on July 18th.

Newell Fears, who was called by the People, testified that he had observed three men running from the rear of the jewelry shop in Hopkinsville at approximately 9:00 A.M. on July 17, 1966. The men entered "a late model two-door Plymouth hardtop," with an Illinois license plate. He followed this car for four blocks, and noted its license plate number. The following day, when he heard of the robbery at the jewelry shop, he associated the incident involving the three men with the crime and reported the license number to the police. He was unable to identify the petitioner as one of the three men he had seen running from the shop.

James Callahan, the sheriff of La Salle County, testified that the license number noted had been issued for

a 1965 Plymouth registered to Richard E. Blassick, 108 West Elm Street, Streator, Illinois. The sheriff acknowledged on cross-examination that the directory he had consulted to identify the license plate registration would not necessarily reflect whether there had been a transfer of ownership of the auto. No evidence was offered to show that the petitioner had transferred ownership of the car, or that he was not the owner of the identified auto.

Edward Moore, a Hopkinsville detective who had investigated the robbery, testified that Henry Clayton, the shop owner, had identified Blassick as one of the robbers from five photographs which were shown him by Moore. The officer said that a photograph of the petitioner which was introduced into evidence was the photograph Clayton had identified. Henry Clayton testified that he was in his store when the robbery occurred and he identified the photograph of the petitioner in evidence as one of 10 or 15 photographs which were given him for examination by the police a few days after the robbery. It was a photograph of one of the robbers, he said. He positively identified the petitioner in court as one of the men who had robbed him. He said that during the robbery the petitioner, with a towel drawn partially across his face, had stood two or three feet from him for about two minutes. He said that the robber had brown eyes but it was shown that the petitioner's eyes are bluish-green.

At the conclusion of the evidence, the trial court held that in an extradition proceeding it did not have authority to weigh the evidence, and that in order for the petitioner successfully to resist extradition the evidence must show beyond all reasonable doubt that he had not been in the demanding State when the crime was committed. Since there was credible evidence that the petitioner had been in Kentucky at the time of the crime, the court denied the petition for *habeas corpus* and remanded the petitioner to the sheriff of La Salle County for extradition to Kentucky.

The petitioner first contends that he was deprived

*inter alia* of due process of law by Clayton's in-court identification of him. The petitioner appeared in court and testified, on the morning of September 21, 1966, that he was not in Kentucky on the date in question. At that time, Clayton was not in court because his plane had been held up by inclement weather. No other witnesses appeared and the matter was held over until the afternoon, at which time Clayton was present and testified. When the court reconvened in the afternoon, the petitioner did not appear on advice of counsel and his attorney announced that the petitioner was waiving his right to be present at the hearing. The assistant State's Attorney protested that the petitioner's absence was due to his fear of identification and he argued that the petitioner had been at liberty under a bond which required his appearance at court. Over his attorney's objection that constitutional rights were to be violated the trial court ordered the petitioner to appear.

The argument is that the petitioner had a right to absent himself from the courtroom and that the court's directing him to appear permitted an in-court identification of him which was improperly suggestive. It is said that the court's action was violative of due process and deprived the petitioner of his right to effective assistance of counsel under the sixth and fourteenth amendments. He also says it constituted an illegal seizure in violation of the fourth and fourteenth amendments. The authority offered to support these claims is: *United States v. Wade (1967), 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926; Gilbert v. California (1967), 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951;* and *Stovall v. Denno (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967.*

The circuit court did not err in directing the appearance of the petitioner. There is no right to avoid confrontation with one's accusers. See *People v. Nelson (1968), 40 Ill.2d 146,* and cases cited.

We have specifically rejected the contention that an in-court identification of an accused without a lineup

denies due process of law. *(People v. Finch (1970), 47 Ill.2d 425.)* Other courts have taken a similar view. See *United States v. Williams (9th cir. 1970), 436 F.2d 1166, 1167; United States v. Moss (3d cir. 1969), 410 F.2d 386; Moore v. State of Texas (1968), 424 S.W.2d 443; State v. Brown (1969), 76 Wash.2d 352, 458 P.2d 165.*

We do not consider the holdings in *Wade, Gilbert* and *Stovall* relevant. *Wade* and *Gilbert* concern the right of an accused to counsel at a police lineup. The proceeding here did not concern a police lineup nor did it occur after the effective date of *Wade-Gilbert, viz.,* June 12, 1967. *(Stovall v. Denno.)* And in any event, the petitioner's attorney was present. *Stovall* directed that *Wade* and *Gilbert* would have only prospective application but it recognized that an accused, apart from any right announced in *Wade* and *Gilbert,* could show that an identification may be "so unnecessarily suggestive and conducive to irreparable mistaken identification [as to deny a defendant] due process of law." (388 U.S. 293, at 302, 18 L.Ed.2d 1199, at 1206.) As we have noted, in *People v. Finch (1970), 47 Ill.2d 425,* we held that an in-court identification of itself does not deprive a defendant of due process. In *Finch,* as here, the defendant argued that under *Stovall* the in-court identification was improper.

The petitioner's second contention is that the trial court erred in declaring it had no authority to weigh the conflicting evidence, and that when properly weighed, the evidence did establish beyond reasonable doubt that the petitioner was not in Kentucky when the crime was committed and was therefore not a fugitive from justice. Understandably no authority is offered to support the argument that in a proceeding such as this the court could properly have weighed conflicting evidence. We say understandably, because the cases oppose the position. In *People ex rel. Webb v. Babb, 5 Ill.2d 35, 41,* this court said: "The Illinois courts have followed the precedent established by

the Supreme Court of the United States in *Munsey v. Clough, 196 U.S. 364,* where the court promulgated the rule that only when it is so conclusively proved that no question can be made that the person was not within the demanding State when the crime is said to have been committed can he be discharged. Thus the court may not weigh the evidence, or discharge the petitioner when the evidence on the fact of his presence in or absence from the demanding State is merely contradictory. [Citations.] " A rationale for this was described in *People ex rel. Downer v. O'Brien (1940), 373 Ill. 383, 386:* "If the evidence on such question is merely contradictory, the courts of this State, will not discharge a person arrested under a Governor's extradition warrant. We will not attempt to determine the truth or falsity of an alibi or the guilt or innocence of the relator." See also *South Carolina v. Bailey (1933), 289 U.S. 412, 421, 77 L.Ed. 1292, 1297.* The evidence here was obviously in conflict.

For the reasons given the judgment of the circuit court of La Salle County denying the petition for a writ of *habeas corpus* is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.