**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Lucio ARENAS–GRANADA and Carlos Arthur Espinosa-Ochoa, Defendants-Appellants.**

**No. 73–2288**
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1973.

Brenda Abrams, Miami, Fla. (Court-appointed), for Arenas-Granada.

Marco Loffredo, Miami, Fla., for Espinosa-Ochoa.

\* Rule 18, 5th Cir.; see Isbell Entrprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409.

Robert W. Rust, U. S. Atty., Jerome B. Ullman, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

Appellants were indicted with others for conspiracy to import cocaine (21 U. S.C. § 963), importation of cocaine (21 U.S.C. § 952(a)), and possession of cocaine with intent to distribute (21 U.S. C. § 841(a)(1)). Appellant Espinosa-Ochoa pled guilty to the conspiracy count of the indictment and was sentenced to eight years in prison with a special parol term of three years. Appellant Arenas-Granada pled not guilty, stood trial before a jury, was found guilty on all three counts, and received three concurrent ten-year prison sentences with corresponding special concurrent parole terms of three years.

■ Espinosa's only request on appeal is that we hold unconstitutional Rule 32(c)(2) of the Federal Rules of Criminal Procedure as applied to grant the sentencing judge *discretion* whether to disclose the presentence report to the defendant. In light of our previous decisions in United States v. Lloyd, 425 F. 2d 711 (5th Cir. 1970); United States v. Chapman, 420 F.2d 925 (5th Cir. 1969), and Good v. United States, 410 F.2d 1217 (5th Cir. 1969), we must decline the invitation.

■ Arenas' sole contention is that a statement improperly volunteered by a government witness so prejudiced him in the eyes of the jury as to require a new trial. Even though he had given his written consent to the search of his apartment, prosecuting attorneys prior to trial had assured counsel for Arenas that nothing found there would be offered in evidence. A customs agent, however, volunteered on direct examination that a "gram scale" was found in the apartment. Arenas' counsel objected, apparently viewing the statement as extremely prejudicial to his client's steadfast contention that he was merely an innocent intermediary, graciously transferring a suitcase with unknown contents as a favor to his Colombian counterymen. The Trial Judge cut short and struck from the record the unresponsive testimony and instructed the jurors emphatically that they were to disregard the statement concerning a "certain article" found in the apartment. Defense counsel lamented to the judge the damage done but made no actual motion for a mistrial. Now, in retrospect, she contends that it incurably prejudiced Arenas' case. We disagree.

■ To require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the stricken statement had a substantial impact upon the verdict of the jury. See United States v. Kimbrell, 470 F.2d 280 (5th Cir. 1972); United States v. Ratner, 464 F. 2d 169 (5th Cir. 1972), and Odom v. United States, 377 F.2d 853 (5th Cir. 1967). Thus we are called upon to view the single, spontaneous reference to the gram scale in relation to the evidence properly introduced against Arenas.

The government's theory was that, according to plan, Arenas knowingly received the purchase price from one Garces-Montoyo, which he paid to Espinosa-Ochoa in return for a suitcase full of cocaine which he then delivered to Garces-Montoyo. Both Garces and Espinosa, the co-conspirators at either end of Arenas' intermediary position, testified adversely to him. Garces stated on the witness stand that, pursuant to his instructions, he met with Arenas (who was operating under an assumed name), transferred to him a paper sack containing $18,000 to $19,000, and the next evening received from him a suitcase full of cocaine. Espinosa testified that, after his arrest by customs agents, he participated in a "controlled sale" of the suitcase full of cocaine to Arenas. Specifically, Espinosa recounted how, as ar-

860

ranged by their coded telephone conversation, he drove with the suitcase to Arenas' hotel, picked him up, received the paper bag full of money from him, and gave him the suitcase. Espinosa recalled that when Arenas asked "how much" was in the suitcase he replied that it contained twenty-one packages without saying "of cocaine." Defense counsel emphasized that both Garces and Espinosa testified that neither discussed with Arenas the amount of money in the paper sack or the precise contents of the suitcase.

The theory of the defense was that Arenas was innocently following the Colombian tradition of doing favors for friends without asking questions which might be taken as implying distrust. Arenas testified that a "Mr. Gustavo" in Columbia requested that he make these surreptitious transfers in Miami, under an assumed name, and that he blindly complied in order not to offend the sensibilities of one claiming to be an influential friend of his brother. He denied that he knew the contents of the paper bag or of the suitcase. Testimony by a customs agent that Arenas admitted he knew the suitcase contained cocaine was contradicted by Arenas.

While the mention of a gram balance might have been severely prejudicial had the crime as presented by the government among the alleged conspirators, splitting packages of cocaine or even an atmosphere of mistrust and measurement among the alleged conspirators, the scenario as presented by neither side indicated that a gram balance was necessary paraphernalia to Arenas' role in the scheme. Certainly any prejudice is not of the magnitude existing when other crimes or prior misconduct are improperly injected by prosecution witnesses. See *Ratner* and *Odom, supra.*

The reference to the scale was brief and cryptic. The prosecutor stated, after the jury was withdrawn, that the agent's remark was spontaneous and un-

expected, and the comments of the court indicate his belief that it was. A prompt and stringent instruction was given by the court and affirmatively acknowledged by the jury. Other evidence of guilt was strong, almost overwhelming. We are unable to find error, let alone plain error.

Affirmed.