UNITED STATES of America,
Plaintiff-Appellee,

v.

Theodore P. WARF, a/k/a Ted Walker
and Ted Warf, Defendant-Appellant.

No. 75–1649.

United States Court of Appeals,
Fifth Circuit.

April 8, 1976.

Rehearing Denied June 9, 1976.

D. Ray Gaskin, Savannah, Ga. (Court-appointed), for defendant-appellant.

R. Jackson, B. Smith, Jr., U. S. Atty., Henry L. Whisenhunt, Jr., Asst. U. S. Atty., Augusta, Ga., for plaintiff-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

This is a case in which the government has not done itself proud either at trial or in this court on appeal.

Defendant Warf and a codefendant were charged with bank robbery, 18 U.S.C. § 2113(a)(d). In a jury trial Warf was convicted, and a mistrial was declared with respect to the codefendant.

The robbery was committed on October 16, 1974, by two masked men, one wearing a ski cap, a stocking pulled down over his face, and sunglasses, the other wearing a baseball-type cap and a stocking over his face. Attempts of eyewitnesses to identify Warf were fruitless except for witness Renee Lanier. A few

weeks after the robbery photos were displayed to her, and she selected two pictures of a male without cap or facial covering as being photos of one of the robbers. At trial she uncertainly stated that "in her own mind" she "believed" the pictures were of Warf, that the subject of the pictures "look[ed]" like Warf, and finally that she "couldn't swear to" a positive identification of the photos as depicting one of the robbers. There was evidence sufficient to support a jury inference that Warf owned a Dodge automobile similar to one used by the robbers and subsequently abandoned near the place of the robbery. There was other evidence that a car like that used by the robbers had been recently seen being followed by a red car, and that Warf had recently purchased a red Oldsmobile.

Warf was arrested in Virginia on October 25. He had in his possession a small amount of bait money taken from the bank, and he was traveling in a red Oldsmobile. Also he had a pistol similar to that used in the holdup.

With the case in this posture the government called as a witness Walter Hartman, a multiple-offender, state and federal, who had been in and out of various prisons for breaking and entering stores and post offices. There ensued two separate but intertwined actions by the prosecutor. First he aided Hartman in locating Warf in the courtroom in order to identify him. He was reprimanded for that. Immediately thereafter Hartman revealed that Warf previously had been in prison. The government states that Hartman's revelation caught it by surprise, though his answer was responsive to the question. But, with this inadmissible and inappropriate information before the jury, the prosecutor nailed it down with another question and answer. Following is the part of the transcript covering both actions:

Q. [Mr. Whisenhunt, Prosecutor]: Mr. Hartman, do you know Ted Warf?

A. [Hartman]: Yes, Sir.

Q. Is he in the Courtroom? ___Is he over at this table where . . .

A. Yes, Sir. Over on the far table.

THE COURT: Well, I don't think that . . .

MR. BUTTIMER [Counsel for codefendant]: I object, Your Honor . . .

MR. GASKIN [Counsel for Warf]: I object . . . .

THE COURT: I agree with you.

MR. WHISENHUNT: I–I . . .

THE COURT: I agree with you. I will reprimand him for it. Don't___Do not ever do that again,__in this Court.

MR. WHISENHUNT: I beg your pardon.

THE COURT: Yes, Sir. You should. All right. I caution the jury to take that into consideration in any identification made.

Q. (Cont'd.)
Can you identify___Under what circumstances do you know Mr. Warf?

A. I was in Federal Prison with him.

Q. How long were you in Federal Prison with him?

A. Oh__Approximately a year.

MR. GASKIN: Your Honor, I___I . . .

THE COURT: Well?

MR. GASKIN: I have an objection.

THE COURT: You want the jury out?

MR. GASKIN: Yes, Sir.

THE COURT: All right. Let the jury go to the rooms. Done the damage now.

MR. GASKIN: Your Honor, I move for a mistrial.

THE COURT: Well, I think I'll___ought to hear him out. I just can't understand___let the Government spend thousands of dollars and come in here and have a witness, knowing he's going to testify to that, make such a statement. I cannot___Go ahead and make your motion.

MR. GASKIN: I move for a mistrial on the grounds that they've put the prison record of the defendant into__into the evidence and

un___it's highly prejudicial, reflects upon his character. He did not introduce character. We think it would be prejudicial to my client. Could not___The verdict could not . . .

THE COURT: Well. Proceed. Your client, Mr.__Warf is going to testify. You're overruled.

MR. GASKIN: No. Your Honor.

THE COURT: Sir?

MR. GASKIN: No Sir.

THE COURT: What do you mean?

MR. GASKIN: He was not going to testify.

THE COURT: I don't see how he can do that counsel. You must know your procedure.

MR. WHISENHUNT: I don't have any__any argument there, Your Honor. I was caught by surprise.

THE COURT: Oh, well, that's all right then, He blurted it out, then. Gracious, he ought to be warned about that. All right I'm going to overrule it. You have a point, there. I'm going to carry the case out and overrule your objection.

MR. GASKIN: I would like to renew my objection. . . . .

THE COURT: It was involuntarily produced.

MR. BUTTIMER: No, he asked the question, how he knew him?

THE COURT: Well, that doesn't mean that___It was a badly phrased question.

MR. GASKIN: I'd also like to go on record with my objection to his pointing to the table. I'd like to . . .

THE COURT: I agree with that. It's badly handled, just___but people have lapses. We all do.

MR. GASKIN: Yes, Sir. I understand that, but certainly__We're___We're trying the man for robbery . .

MR. WHISENHUNT: May it please the Court. I was not pointing at the Defendant over there. I was point-ing at the table, and was goin' to say "the table" . . .

THE COURT: You were directing his attention over there, but he would have picked him out eventually. We know that. Go ahead and make your record as full as you want.

MR. GASKIN: I move for a mistrial on the grounds that the District Attorney__The Government__indicated by pointing his finger at the table for the purpose of identification of the Defendant, Warf, thereby leading and indicating to the witness, Hartman, is it? . . .

MR. WHISENHUNT: Right.

MR. GASKIN: . . . Hartman, just who he should identify.

THE COURT: Mr. Hartman, was there any discussion between you and the Government attorneys with regard to what you were going to say about having met him in prison?

A. No, Sir.

THE COURT: Did you just blurt that out, or did they know it?

A. I just answered the question I was asked.

THE COURT: You thought you answered the question?__How you knew him?

A. Yes, Sir.

THE COURT: Well, that question was very badly phrased.

MR. BUTTIMER: Well, there was no other way he could have known him. Not that it had been a minimum . . .

THE COURT: Well, you haven't got anything to do with this . . .

MR. BUTTIMER: . . . but it was obvious . . .

THE COURT: . . . But it hasn't got anything in the world, even if I grant him a mistrial, your client is goin' right on through the trial.

MR. BUTTIMER: I'm not askin' for one.

THE COURT: All right. Well, it's just_____I'm goin' to overrule it, but . . .

MR. WHISENHUNT: Well, it's . .

THE COURT: It's just___You're wasting your time from now on in my viewpoint and the only thing that might save you by a thread, by a razor's edge, is the fact that, while you asked a very inexpert, inartifical question, it was entirely innocent, and you did not do it with the intention of eliciting this man's prison record. All right.

MR. WHISENHUNT: May it please the Court. We'll withdraw the witness if you'll instruct the jury to have no reference whatsoever to umm. .

MR. GASKIN: Your Honor, the harm has been done . . .

THE COURT: The damage is the__is what's in the record. It's not what he's . . .

MR. GASKIN: . . . The harm has been done . . .

THE COURT: . . . going to to testify to.

MR. GASKIN: . . . We were not going to put our client on the stand, and I was not going to put my client on the stand, at all. He was not going to take the stand.

THE COURT: All right. Put whatever else you want to in the record now. Make your motion for a mistrial.

MR. GASKIN: I move for a mistrial first on the un__improper identification by the pointing out of the Government, pointing to Mr. Warf, the table where Mr. Warf sat; I move for a mistrial on that ground, and I also move for a mistrial on the grounds that the question was asked of Mr. Hartman, and the answer that solicited___was solicited or the answer that was given indicated the past record of__prison record, which is harmful and prejudicial to my client, and we move for a mistrial on that ground . . .

THE COURT: All right. I'm going to overrule it, with much doubt. All right, bring the jury back in. Don't get into that, now.

MR. WHISENHUNT: Your Honor, may I say something before . . .

THE COURT: Wait just a minute. Before what?

MR. WHISENHUNT: Before we uh__say . . .

THE COURT: What?

MR. WHISENHUNT: Before we uh__begin testimony before the jury.

THE COURT: Say what?

MR. WHISENHUNT: Instruct him not to make any statement at all.

THE COURT: Well, you know that now, don't you, Mr. Hartman?

A. Yes, Sir.

THE COURT: All right. Ladies and Gentlemen, the statement that was blurted out by this witness as to the circumstances under which he had known Mr. Warf is not relevant, it's not material, it's highly prejudicial to the defendant, Mr. Warf. Now, ignore any testimony with reference to the conditions under which this witness knew him. If you can disabuse your mind of that, do it. I try to do it. I have to do it all the time when I try non-jury cases, and I think I can do it. You do it likewise, because it hasn't got anything to do with this case, and it should not have been injected in it, and it was just an error that came into the case. I don't think Mr. Hartman meant any harm by it, and I'm certain that counsel did not expect that answer in asking the question how he knew him. So go ahead.

██ Hartman testified that he saw Warf in Virginia on October 24, 1974, that Warf told him "I am a little bit hot," and, when asked what he had done, said that he had robbed a bank and had had a duffle bag of money since he had last seen Hartman. Hartman verified that Warf was driving a red car and was carrying a pistol.

Summarizing the evidence against Warf without Hartman's testimony it

was: (1) a very dubious identification; (2) Warf's ownership of a car similar to that used in the robbery, plus the fact that a car of that description had been seen followed by a red car, plus Warf's ownership of a red car; (3) bait money on Warf when he was arrested; (4) possession of a gun resembling that used in the robbery. With circumstantial evidence this thin, Hartman's testimony of incriminating statements made by Warf was critical. The incriminating statements were no stronger than the ability of Hartman to identify the man who he said had uttered them.

The prosecutor assisted Hartman both verbally and by pointing. The explanation made to the District Court that he was pointing at the table where Warf was seated rather than at Warf individually is no explanation at all. The trial judge's statement that Hartman would have picked out Warf eventually was speculative, and, in any event, delay or indecision by Hartman in making an identification might have diminished the effect of his testimony.[1]

With respect to the testimony concerning Warf's having been in prison, accepting that the prosecutor expected Hartman to respond to his first question with no more than a reference to meeting Warf in Virginia, counsel followed it up with the inquiry "How long were you in Federal Prison with him?" This is not, as the District Judge called it, a "badly phrased question." The phraseology is clear enough. It is a direct and additional inquiry into subject matter already inappropriately before the jury. Rather than ameliorate harm already done, it added to it.

Under all of the circumstances "the thread, the razor's edge" to which the trial judge referred are too gossamer and too sharp. We cannot say that his efforts to cure the prejudice carried enough probability of success.

Before this court the government has not improved its position. It makes the incredible argument to us that no identification of Warf by Hartman was either *necessary or intended.* Certainly identification was necessary. The incriminating statements were meaningless unless Warf was identified as the person who uttered them. And it cannot seriously be urged that the government did not intend the consequences of asking Hartman to identify Warf and assisting the witness in locating him in the courtroom in order that the identification come about.

 The government further endeavors to justify the pointing incident by setting out in its brief, wholly outside the record, the prosecutor's subjective and unrecorded impressions that he states caused him to point. This is inappropriate and we would not consider these statements as justification. Actually they accentuate rather than dispel the government's error. The explanation is that the prosecutor considered that Hartman was wilfully avoiding looking where Warf was seated so that, after an "interminable pause," the prosecutor acted in order to "localize Hartman's attention."

The government has taken a similar approach with respect to Hartman's statement that he had known Warf in prison. Again proceeding outside the record, the brief states that in a conference before trial the prosecutor instructed Hartman not to mention prison with reference to Warf. No such representation should have been made to us. The defendant cannot have his rights adjudicated on appeal on the basis of counsel's non-record statements concerning a private interview with a witness, asserted without confrontation, cross-examination or means of rebuttal.

REVERSED and REMANDED.

GEE, Circuit Judge (dissenting):

The majority opinion is properly critical of the government's performance in this case, both at trial and on appeal.

---

1. Indeed this possibility seems to be one of the reasons that the government offers for the prosecutor's coming to Hartman's aid. See discussion, *infra.*

The prosecutor's action in pointing toward Warf and the references to Warf's prior incarceration were obviously improper. But these improprieties are reversible error only if there is a significant possibility that they had a substantial impact on the jury's verdict. *E. g., United States v. Constant,* 501 F.2d 1284, 1289 (5th Cir. 1974), *cert. denied,* 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975); *United States v. Arenas-Granada,* 487 F.2d 858 (5th Cir. 1973). I respectfully dissent because I believe the majority opinion attaches insufficient weight to the totality of the evidence and consequently errs in performing the "harmless error" balance.

Leaving aside Hartman's testimony, the majority opinion describes the evidence against Warf as "thin" and "circumstantial." In the first place, the identification of Warf by Renee Lanier is direct evidence of Warf's guilt. The uncertainty which the majority purports to find in that identification emerged under relentless cross-examination, and any weakening of her testimony is clearly attributable to the skill of defendant's attorney rather than to any inherent weakness in her identification. *See United States v. Bonds,* 526 F.2d 331, 339 (5th Cir. 1976). The majority's summary of the "circumstantial" evidence omits the significant fact—referred to earlier in the opinion—that Warf's automobile, identified as similar to the one used by the robbers, was found on the day of the robbery, abandoned near the scene of the crime. If this be added to the summary, we see a defendant with a car and a gun like those used in the crime, identified at the scene of the crime, apparently on the run with his car abandoned near the crime, and caught with some of the loot. With deference, this is not what I call thin.

Most significantly, the majority's assessment of the possible impact of the prosecutor's indiscretions virtually ignores the strongly incriminating statements attributed to Warf by Hartman. The weight of these statements is admittedly no greater than the ability of Hartman to identify the defendant as the declarant, but the majority ignores the strong indicia of reliable identification provided by the circumstances of this case. Hartman identified the defendant by name and testified to an acquaintance with the defendant spanning about a year. Unlike Renee Lanier, Hartman was not identifying Warf as a previously unknown bank robber, seen on one occasion only and that the occasion of the crime for which Warf was being tried. As to her, the question was whether she could pick him out at all from among others present. By contrast, there is no real doubt or dispute that Hartman had known the defendant Warf previously and known him well. He was not identifying him in the sense that Ms. Lanier was, the sense of trying on the basis of a single earlier and imperfect viewing of the robber to determine whether her recollections were sufficient to fix upon Warf or, indeed, on anyone. Hartman was merely stating whether one whom he could without doubt identify was present in the courtroom. Thus, the cases are not parallel; and the prosecution is in large degree correct that no identification of Warf by Hartman, in any strict sense, was either necessary or intended. Given its context, Hartman's testimony may be considered as evidence of Warf's guilt for the purpose of determining the possibility that the prosecutor's indiscretions had a substantial impact on the verdict. Considering all the evidence and the fact that the trial judge gave prompt instructions to disregard both improprieties, I believe that the improprieties created only "harmless error." [1]

With respect to the references to Warf's prior incarceration, the persistence of the prosecutor in asking a follow-up question exacerbated the impropriety, but it did not automatically cre-

1. The majority quotes and refers to the trial judge's "razor edge" and "thread" comments, but it should not be lost that after making them he denied a mistrial.

ate reversible error. *See United States v. Barcenas,* 498 F.2d 1110, 1112–14 (5th Cir.), *cert. denied,* 419 U.S. 1036, 95 S.Ct. 521, 42 L.Ed.2d 312 (1974). The forceful instruction to the jury to disregard these references mitigated their impact, and any error remaining was harmless.