**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William BUSH, a/k/a William Turner,
Defendant-Appellant.**

**No. 83–2147.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1984.

Decided Dec. 10, 1984.

Certiorari Denied March 18, 1985.
See 105 S.Ct. 1771.

Coffey, Circuit Judge, filed concurring opinion.

Michael J. O'Leary, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Linda L. Listrom, Jenner & Block, Chicago, Ill., for defendant-appellant.

Before COFFEY, Circuit Judge, and FAIRCHILD and PELL, Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

Appellant Bush was convicted of armed robbery of a federally insured savings and loan association.

The Princeton, Illinois branch of a savings and loan association was robbed just before closing on January 19, 1980. Tellers Karen Metternich and Rita Miller were on duty. Ms. Metternich testified that a man entered and conversed with her, asking directions to the restroom. He started in that direction, but then returned to the counter. He came through a gate into the teller area and told the tellers this was a robbery. He displayed a handgun. About that time a second man came in and stood in front of Ms. Metternich's window.

The second man told Ms. Metternich not to touch anything. The first man took money from the drawers. The men then directed the tellers to a closet and told them to stay in it. The tellers remained until they heard the back door shut.

Ms. Miller testified generally to the same effect although she remembered that the second man had the gun. Although the tellers' testimony recounting the men's acts and statements often did not ascribe them

to a particular one, the phrasing made clear the tellers' understanding that both men were acting together.

Ms. Metternich testified that defendant "resembles" the first man, but could not positively state that he was the man. Ms. Miller was asked whether she thought she could identify either of the men. She answered, "The first one, I don't think with certainty. And I'm not sure about the second one either."

A state crime scene technician and fingerprint examiner was accepted by the court as an expert in those fields. About two hours after the robbery he had secured latent prints from a blue box on the first shelf of the safe and from a smaller white box on the floor in front of the safe. He testified that in his opinion a print from the blue box matched a known print of defendant's right thumb and a print from the white box matched defendant's left thumb.[1]

## I. Sufficiency of Evidence

█ Appellant's principal point is that the evidence was not sufficient to dispel a reasonable doubt that his prints were left on the boxes during the course of the robbery.

The record shows nothing concerning the history of the blue box. As to the white box, it shows only that it was received in the mail from another bank. It is, of course, theoretically possible that appellant may have handled each of the boxes on some earlier occasions between their manufacture and their receipt and use by the savings and loan association. The Government did not prove that earlier contact was impossible. We conclude, however, that enough was shown so that the mere possibility does not compel, as a matter of law, a reasonable doubt.

Ms. Miller testified that the blue box was an ordinary envelope box that the association used to catch night deposits dropped directly into the safe from an exterior chute. The smaller white box contained blank deposit tickets and had been mailed to the association. Miller testified that white boxes of blank deposit tickets are normally kept on the top shelf of the safe close to the blue box until needed. She indicated the only explanation for the white box being on the floor after the robbery was that the two robbers had moved it or dropped it. Access to the area of the bank where the safe is located is restricted to bank employees. There was testimony that Bush had never been an employee or depositor.

It is clear that the two boxes reached the association through different channels. In the nature of things it is very highly improbable that at some time before the white box had been mailed to the association, the two boxes had been together in some location or channel where Bush handled them or that he had handled each of them while they were in different locations or channels. We think the jury could properly disregard the mere possibility that these things might have happened, and find, beyond a reasonable doubt, that Bush had his hands on them during the course of the robbery.

Our only hesitation in so holding arises out of a majority decision of a very distinguished court. *Borum v. United States*, 380 F.2d 595 (D.C.Cir.1967). Chief Judge Bazelon wrote the opinion for the court. Circuit Judge J. Skelly Wright concurred and then Circuit Judge, now Chief Justice, Burger dissented.

In *Borum*, the defendant had been convicted of housebreaking. A coin collection had been taken during the break-in and Borum's fingerprints were found on two glass jars which had contained the collection. There was evidence that the prints could have been on the jars "indefinitely" or "for a period of years." "The Govern-

---

1. The robbery occurred January 19, 1980. Bush was indicted December 2, 1982 and trial occurred April 7, 1983. At a hearing on a motion to dismiss it appeared that a confidential tip to other authorities as to Bush's involvement in an offense in another city and similarities between the offenses ultimately led to suspicion of Bush concerning the offense at issue and to comparison of fingerprints. The court was satisfied that the relevant information was first made available to the authorities in this case around August 1, 1982.

ment introduced no evidence which could account for, or even suggest an inference about, the custody or location of the jars during that period.... With evidence so inconclusive, a reasonable person must have a reasonable doubt about Borum's guilt." 380 F.2d at 596–97. The judgment was reversed.[2] Judge Burger concluded that the majority was going beyond the requirement of proof beyond a reasonable doubt and requiring proof beyond all and every doubt. 380 F.2d at 601.

Appellant also relies on *United States v. Lonsdale*, 577 F.2d 923 (5th Cir.1978).

In *Lonsdale*, defendant's thumbprint was found on an unlawfully uttered United States treasury check. The check was endorsed with defendant's name, as well as the payee's name, and bore defendant's social security number. The Fifth Circuit found the only "truly damning evidence" introduced by the Government was the thumbprint on the check.[3] The court noted that the Government was required to prove the defendant "uttered the check, not [just] that he touched it." 577 F.2d at 926. The court concluded that without evidence that the defendant had no opportunity to touch the check under innocent circumstances prior to the time it was cashed, the Government had not met its burden. *Id.* at 927.

The Ninth Circuit has declined to find reasonable doubt as a matter of law in cases where a defendant has relied on *Borum* or *Lonsdale*.

In *United States v. Scott*, 452 F.2d 660 (9th Cir.1971) defendant was convicted of theft from a federal savings and loan association. The evidence presented against him at trial consisted of his fingerprints found on a battery inside a flashlight left at the scene of the crime and his fingerprint on a blank check and on a packet of travelers checks taken during the theft. In

upholding the defendant's conviction, the Ninth Circuit explained that:

> The identification of the defendant's fingerprints upon one battery inside the flashlight might well have been insufficient circumstantial evidence to survive a motion for acquittal. But when that evidence is combined with positive fingerprint evidence upon the Association's stolen check and its stolen travelers checks, the ring of circumstantial evidence tightens around the defendant. We agree with the trial court that it justified submission to the jury.

*Id.* at 662. *See also United States v. Talbert*, 710 F.2d 528, 530–31 (9th Cir.1983) (extremely unlikely that out of one hundred bowling pins defendant innocently touched the one used in murder).

In these cases the court in reviewing a jury finding of guilt made a judgment of the extreme improbability of a theoretically possible event and decided that acknowledgement of a reasonable doubt was not compelled as a matter of law, and the question could properly be left to the jury.

But whether or not we would have decided the same as the *Borum* court if presented with identical facts, we conclude here that the evidence did not establish reasonable doubt as a matter of law, and the jury was left free to make a finding of guilt beyond a reasonable doubt.

Appellant argues in addition that even if there is sufficient evidence of his presence there is insufficient evidence that he participated in the robbery. The argument has not merit. The fingerprint evidence placed him back of the counter, reaching into the safe and touching the boxes. Ms. Metternich testified that while one man took cash the other told her not to touch anything. Ms. Miller testified that one man said "We want the money. That's all we want."

---

**2.** In a case decided the same day, Judge Bazelon concurred in an opinion upholding convictions for housebreaking and robbery because defendant's fingerprints were found on objects that had been in the owner's home from three to twelve years before the break-in. *Stevenson v. United States*, 380 F.2d 590, 594–95 (D.C.Cir. 1967) (Bazelon, J., concurring).

**3.** The Government's handwriting expert testified that there were no similarities between the signed endorsements and defendant's handwriting though it might have been purposely disguised.

The tellers' testimony, in context, made clear their belief that the men acted in concert.

## II. Testimony as to Resemblance

The prosecutor asked Ms. Metternich, "Do you see anybody here in the courtroom today that resembles one of the two men who robbed you on that day ...?"

Pointing out defendant, she answered "He resembles him." There was no objection. On cross-examination she testified that the resemblance was to the man who first entered the bank, but that she could not positively state whether he was the robber. Nothing in the record suggests any prior out-of-court identification.

Appellant argues that this was a suggestive identification procedure which denied due process of law.

The question whether conditions of an in-court identification itself may be so suggestive as to deny a defendant due process of law has been considered by only a few federal courts of appeals. In *United States ex rel. Clark v. Fike*, 538 F.2d 750 (7th Cir.1976), this court dealt with a petition for a writ of habeas corpus based in part on a challenge to in-court identification testimony in an Illinois prosecution. Petitioner contended that the testimony of a Mrs. Kent was inherently unreliable principally because the perpetrator of the crime was black and petitioner was the only black sitting at counsel table. The trial court denied petitioner's motion for an in-court lineup. The Illinois Supreme Court held petitioner had no right to an in-court lineup, finding race to be "a mere identifying characteristic." *People v. Clark*, 52 Ill.2d 374, 387–88, 288 N.E.2d 363, 370 (1972) (quoting *State v. Brown*, 76 Wash.2d 352, 353, 458 P.2d 165, 166 (1969)). Writing for this court, Judge Sprecher stated:

> Although a person's race is more than a *mere* identifying attribute, and although more than a mere possibility of misidentification exists when a witness in the witness box is faced with having to make an identification not having seen the perpe-

trator for five months, we must note that a defendant in a criminal trial as yet has no right to an in-court lineup. *United States v. Moss*, 410 F.2d 386 (3d Cir. 1969). Moreover, Mrs. Kent's testimony remained credible and unshaken after a thorough cross-examination by competent counsel. Petitioner's arguments here were arguments which he properly made to the jury during trial. Mrs. Kent's testimony was neither so unreliable, nor so fraught with the possibility of misidentification that petitioner was denied a fair trial. What inconsistencies existed, were properly for a jury and not a reviewing court to consider.

538 F.2d at 755–56 (emphasis in original).

■ The decision reached in *Fike*, that the question of the possible suggestiveness of the in-court identification was ultimately for the jury to determine, is consistent with the general view that identification testimony is for the jury to weigh unless there is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

The deference shown the jury in weighing the reliability of potentially suggestive out-of-court identification would seem even more appropriate for in-court identifications where the jury is present and able to see first-hand the circumstances which may influence a witness.

At least two circuits have nevertheless found conditions surrounding some in-court identifications so suggestive that a defendant's due process rights are implicated. In *United States v. Warf*, 529 F.2d 1170 (5th Cir.1976), the Fifth Circuit held that a prosecutor's attempts to influence an identification by pointing and verbally directing the witness when coupled with the erroneous admission of defendant's prison record was so prejudicial as to require reversal of the conviction. The court did not, however, hold that the prosecutor's suggestive actions during the identification would alone have required reversal.[4] The Second Cir-

4. The Eleventh Circuit recently emphasized that  it was the combined impact of the two prosecu-

cuit has recently gone farther, finding that an overly suggestive in-court identification by itself violates due process, though also finding the error harmless in the case before it. *See United States v. Archibald*, 734 F.2d 938 (2d Cir.1984). Acknowledging the inherent suggestiveness of any in-court identification where defendant sits at counsel table, the court found significant that "the defendant himself recognized that there was a problem of suggestiveness." *Id.* at 941. The defendant told his attorney that he "wanted to be seated with five or six other black men who looked reasonably like him, to ensure that he would not be obviously singled out by an educated witness." *Id.* The trial court denied defendant's request finding no obligation to stage a lineup. The Second Circuit found that while they "may agree ... there was no obligation to stage a lineup, ... there was ... an obligation to ensure that the in-court procedure did not simply [amount to a show-up]." *Id.* Given that the defendant was the only black in the courtroom the Second Circuit held that:

> [H]is request should not have been dismissed so quickly or so absolutely by the trial court. A fairly short delay of proceedings was all that would have been required to rearrange the seating in the courtroom and to secure the presence of some people of the defendant's approximate age and skin color. While it was not necessary for the court to conduct a true *Wade* -type of lineup, these relatively minor steps were required to ensure that the identification was not unfair. The in-court identification procedure utilized here was so clearly suggestive as to be impermissible, however traditional it may be.

*Id.* at 942–43.

█ Those cases reveal no basis for reversing defendant's conviction. As an initial matter, this is not an identification case. Ms. Metternich was unable to identify Bush; her testimony was only that Bush resembled one of the robbers. While this testimony may raise due process concerns, *see United States v. Brooks*, 449 F.2d 1077, 1083 (D.C.Cir.1971), the impact of the testimony is not likely to be as great.

Nor are the circumstances surrounding Ms. Metternich's testimony as suggestive as those in *Warf* or *Archibald*. There is no evidence of prosecutorial misconduct; nor is there evidence that the defendant stood out physically from others in the courtroom.[5] The only suggestive circumstance identified by defendant is that he sat at counsel table. This circumstance alone is not enough to establish a violation of due process. Without more, any uncertainty surrounding Ms. Metternich's testimony, whether because of length of time since commission of the offense or the lack of a reliable pretrial identification or the suggestiveness of the seating arrangements at trial, was for the jury to consider. *Fike*, 538 F.2d at 756.

Finally, unlike defendants in *Fike, Warf,* and *Archibald*, Bush did not object to Ms. Metternich's testimony during trial. To reverse on appeal, we would have to find that the trial court committed plain error in admitting Ms. Metternich's testimony. Fed.R.Cr.P. 52(b). Given the uncertainty surrounding the scope of defendant's due process right during a traditional in-court identification, there is no basis for finding that the trial court committed plain error in not, *sua sponte*, responding to any suggestive conditions surrounding Ms. Metternich's resemblance testimony.[6]

We note also that in his opening statement, one of the prosecutors predicted that both tellers would identify Bush as one of

---

torial errors, along with "otherwise skimpy" evidence, that prompted the *Warf* court to find a violation of due process. *Code v. Montgomery*, 725 F.2d 1316, 1320 (11th Cir.1984). The court also found that a criminal defendant has no due process right to a pretrial lineup. *Id.* at 1320 & n. 4.

**5.** While Bush is black, as were the robbers, the record does not indicate that he was the only black in the courtroom as in *Archibald*.

**6.** We also reject defendant's suggestion that his trial counsel's failure to object amounted to ineffective assistance of counsel.

the two robbers. When they testified, however, his colleague questioned Ms. Metternich only in terms of resemblance and Ms. Miller in a form even less likely to bring forth an identification. The record contains no further indication, but if the prosecution originally had some basis for its prediction, and the witnesses advised before testifying that they could not identify Bush, except that Ms. Metternich believed there was a resemblance, there would be even less force in a claim that the in-court procedure was suggestive.

### III. Instruction

The court instructed the jury as to four essential elements which must be proved in order to establish the armed robbery offense charged in Count I. The instruction listed three acts and the requirement that such acts be done willfully. It then instructed that if each element has been proved beyond a reasonable doubt, defendant should be found guilty and that if any was not so proved, the defendant should be found not guilty. There was no objection to this "elements" instruction.

■ The court then instructed, doubtless because of the conflicting testimony as to which robber had the gun,

it is not necessary that the Government prove beyond a reasonable doubt that the defendant himself personally used a dangerous weapon in committing the robbery. The Government must show that a dangerous weapon was used by either the defendant or his accomplice in the commission of the offense.

Appellant's trial counsel objected to the latter instruction on the sole ground that it was unfair because the indictment charged that defendant used the weapon.

The Government pointed out that a defendant may be convicted of aiding and abetting even though charged as a principal. *United States v. Galiffa,* 734 F.2d 306, 312 (7th Cir.1984); *United States v. Tucker,* 552 F.2d 202, 204 (7th Cir.1977). This rule has been applied where participants in a bank robbery who did not carry a weapon, were convicted of armed robbery where other participants carried weapons. *United States v. Kress,* 446 F.2d 358, 362 (9th Cir.1971), *cert. denied,* 404 U.S. 947, 92 S.Ct. 304, 30 L.Ed.2d 264. *See also United States v. Marx,* 485 F.2d 1179, 1185 (10th Cir.1973).

The objection had no merit, and Bush's appellate counsel does not claim that it did.

Rather, present counsel argues that the "elements" instruction together with the one just quoted permitted the jury to find defendant guilty if they believed Bush was merely present while the other man committed armed robbery. They point out that the "elements" instruction stated only that certain acts must be proved beyond a reasonable doubt, without a specific assertion that Bush must be proved to have committed the acts personally or have affirmatively participated.

No objection was made at trial on the ground now argued. Indeed the Government suggested an aiding and abetting instruction. Defense trial counsel ignored the suggestion.

Federal Rule of Criminal Procedure 30 requires that a party's objection to a jury instruction state "distinctly the matter to which he objects and the grounds of his objection." *See United States v. Verkuilen,* 690 F.2d 648, 652–53 (7th Cir.1982); *United States v. Jackson,* 569 F.2d 1003, 1008–09 (7th Cir.1978); *United States v. Gratton,* 525 F.2d 1161, 1162 (7th Cir. 1975). A general objection to an instruction or an objection on grounds other than those raised on appeal does not satisfy Rule 30. *See Verkuilen,* 690 F.2d at 653 (general objection insufficient); *Jackson,* 569 F.2d at 1008–10 (objection on other grounds insufficient). Accordingly, the issue on appellate review is whether the district court's submission of the challenged instruction constituted "plain error" within the meaning of Fed.R.Crim.P. 52(b). *Jackson,* 569 F.2d at 1010; *Gratton,* 525 F.2d at 1162.

Reading the instructions as a whole, we find little likelihood that the jury could have been misled into finding guilt based on mere presence in the manner counsel

suggests. We are satisfied there was no plain error.

The judgment appealed from is AFFIRMED.

COFFEY, Circuit Judge, concurring.

I concur in the majority's conclusion to affirm defendant Bush's conviction for armed robbery in violation of 18 U.S.C. § 2113(a), (d). I write separately, however, on the sufficiency of the evidence and the testimony concerning defendant Bush's resemblance as one of the armed robbers.

In section I of the opinion, the majority properly reasons that there was sufficient evidence presented at trial for the jury to find, beyond a reasonable doubt, that Bush participated in the armed robbery. Indeed, an expert witness testified at trial that Bush's fingerprints were found on a white box and a blue box stored in the bank safe. The testimony further revealed that these boxes were kept in the bank safe at all times and that access to the safe was restricted exclusively to bank employees. Bush was never an employee of the bank nor was he ever authorized to lawfully enter the safe. Accordingly, the boxes were inaccessible to Bush and it was reasonable for a jury to conclude, beyond any doubt, that his handling of the boxes occurred during the unlawful armed robbery. Rather than end the analysis at this point, the majority erroneously refers to the D.C. Circuit's decision in *Borum v. United States,* 380 F.2d 595 (D.C.Cir.1967) (*"Borum"*).

In *Borum,* a divided court overturned a conviction for unlawful entry into a private dwelling because the only evidence against the defendant was the presence of four fingerprints on empty jars that were found in the ransacked home. According to the court, there was "no evidence indicating that the [jars] were generally inaccessible" to the defendant, and thus the jury could only speculate that the defendant handled the jars during the illegal entry. *Borum,* 380 F.2d at 596. The court concluded that "[w]ith evidence so inconclusive, a reasonable person must have a reasonable doubt about [the defendant's] guilt." *Id.* at 597. In stark contrast to the facts in *Borum,* the evidence in the present case is indisputably clear that the boxes were stored in the bank safe and were at all times inaccessible to Bush. Thus, the facts in the present case are wholly inapposite to the facts in *Borum.*

Moreover, in *Borum,* the jars on which police found the defendant's fingerprints "were stored in the second floor closet of a private home to which [the defendant] had no lawful access." 380 F.2d at 599 (Burger, J., dissenting). Common sense dictates that the defendant's only opportunity to handle these hidden jars was during the course of his illegal entry. It was certainly reasonable for the jury to infer, beyond any doubt, that the defendant's fingerprints were placed on the jars during his unlawful presence in the home. As then Circuit Judge Burger noted in dissent, "[t]he majority seems to assume that the prosecution's case must answer *all* questions and remove *all* doubts, which, of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt." *Id.* (emphasis original). The hypertechnical *Borum* analysis conflicts with the well-settled rule that a jury verdict must be sustained if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moya,* 721 F.2d 606, 609 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984) (emphasis original) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Rather than refer to the *Borum* decision, which is easily distinguishable from the present case and contains faulty legal reasoning, I would cast it afloat on the troubled waters of the 60's, ever to be forgotten in our annals of legal history, as a time when far too many of our courts were concerned with expanding the rights of the criminal defendant. In their zealous attempts to achieve this end, the courts upset the ever

delicate balance between the rights of the defendant as against those of society as a whole, known as the common good of all mankind, an underlying premise of our Judeo-Christian heritage.

I also distance myself from the majority's reference to *United States v. Archibald,* 734 F.2d 938 (2d Cir.1984) *("Archibald")* in section II of the opinion. In *Archibald,* the defendant asked in advance of trial "that he be seated away from the defense table and that other black men be seated in the courtroom" because he feared that his lone presence at the defense table would lead to a suggestive in-court identification. 734 F.2d at 942. The trial court refused the defendant's request and on appeal the Second Circuit reversed, ruling that "[t]he in-court identification procedure utilized here was so clearly suggestive as to be impermissible, however traditional it may be." *Id.* at 942–43. In the present case there was no in-court identification, the prosecutor simply asked the witness whether or not anyone in the courtroom resembled one of the armed robbers. The witness pointed to the defendant Bush and stated that "[h]e resembles him." This resemblance testimony did not constitute a positive identification and the defense counsel had ample opportunity to cross-examine the witness' inability to identify Bush.

I further note that the majority quotes the Second Circuit's broad due process holding in *Archibald* but completely ignores the fact that the defendant in that case feared irreparable suggestivity resulting from the in-court identification and asked, before trial, to be seated with other people of his approximate age and skin color. According to the Second Circuit, if a defendant fears a suggestive in-court identification, "'his remedy is to move for a line-up order to assure that the identification witness will first view the suspect with others of like description rather than in the courtroom sitting alone at the defense table.'" *Id.* at 942 (quoting *United States v. Brown,* 699 F.2d 585, 594 (2d Cir.1983)). The record in the present case is absolutely void of any evidence that Bush believed, in advance of trial or anytime during trial,

that resemblance testimony would be suggestive and/or prejudicial. Bush never asked the district court for a "line-up" order and thus the due process reasoning in *Archibald* is wholly inapplicable to the instant case.

Finally, this case is singularly inappropriate for addressing the parameters of a defendant's proposed due process rights during an in-court identification. The witness not only failed to positively identify Bush but the defense counsel failed to object when the prosecutor posed the resemblance question. Because the alleged error was not preserved, the only issue before this court is whether the district court committed plain error in admitting the resemblance testimony. As the majority opinion acknowledges, "[t]here is no evidence of prosecutorial misconduct; nor is there evidence that the defendant stood out physically from others in the courtroom. The only suggestive circumstance identified by the defendant is that he sat at counsel table." (Footnote omitted). Accordingly, the instant case does not present facts that warrant reference to the *Archibald* opinion, much less a discussion of the possible due process rights to be afforded a defendant during an in-court identification.